STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **S.F., E.F., and A.F.**

**No. 20-0826** (Monongalia County 20-JA-39, 20-JA-40, and 20-JA-41)

**MEMORANDUM DECISION**

Petitioner Mother N.L., by counsel John C. Rogers, appeals the Circuit Court of Monongalia County's September 22, 2020, order terminating her parental and custodial rights to S.F., E.F., and A.F.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Frances C. Whiteman, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed a child abuse and neglect petition alleging that the children had been physically and emotionally abused while in the care of petitioner and custodian, R.L. According to the DHHR, then nine-year-old E.F. disclosed to a Child Protective Services ("CPS") worker that R.L. hit her with "a spoon, belt, and hand," which had left bruises. E.F. also disclosed that petitioner "tied [a kitchen apron] up to [her bedroom] door" to "lock [the children] up" in their room. S.F. and A.F. confirmed this disclosure and stated that they were required to urinate and defecate in their room on "puppy pads." The CPS worker observed that then ten-year-old S.F. had two black eyes, which she disclosed were the result of R.L. hitting her.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

S.F. explained that R.L. was "always yelling at [the children] and [was] constantly getting mad at them for no reason." S.L. disclosed that the children were only allowed to leave their room to eat and that they were locked in their rooms "every single night[,] all night."

The DHHR alleged that CPS workers and law enforcement investigated petitioner's home as a result of the children's disclosures. The investigators observed a blue kitchen apron tied in a knot around the children's bedroom door handle and a blue and white "pee pad" in their bedroom that was saturated in urine and had human feces on it. Finally, the CPS workers interviewed petitioner, who acknowledged the children's bruises, but denied knowing how they occurred or that she sought treatment for the injuries. Petitioner also explained that she locked the children in their rooms only when they were grounded because the children had attention deficit/hyperactivity disorder ("ADHD") and would not stay in their rooms. Finally, the DHHR alleged that R.L. had been convicted of domestic battery against petitioner and that, at the time the petition was filed, he was serving one year of probation, which included a term that he have no contact with petitioner or the children. Despite this, R.L. was living with petitioner and the children and was found at the home at the time of the DHHR's investigation. Petitioner waived her right to a preliminary hearing.[2]

In July of 2020, the DHHR amended the petition to include E.F.'s disclosures that R.L. sexually abused her.[3] According to the DHHR, E.F. disclosed to her therapist that R.L. saw "her girl parts and had rubbed it with his hand" and that he wanted the child to touch his "boy parts." E.F. also disclosed that petitioner "walked in on [that event] and stated to [R.L.,] 'quit touching the kids.'" The DHHR also included allegations that the children's biological father had sexually abused A.F.

The circuit court held an adjudicatory hearing later that month. Petitioner did not appear but was represented by counsel. The DHHR presented testimony that was consistent with the allegations in the petition, which included photographs of the children's injuries at the time of their removal from petitioner's care and notes from the children's therapy sessions related to the disclosures of sexual abuse. Petitioner presented no evidence. Ultimately, the circuit court found that petitioner had failed to protect the children from R.L.'s sexual and physical abuse. The court noted that petitioner "had access to resources" to prevent the abuse of her children as evidenced by the terms of R.L.'s probation to not have contact with her or the children, but petitioner did not utilize those resources or avail herself of protections provided by the court. Additionally, the circuit court found aggravated circumstances existed based on the evidence presented, such that the DHHR was not required to make reasonable efforts to reunify the family. Thereafter, petitioner filed a motion for a post-adjudicatory improvement period.

---

[2]Petitioner was charged with two felony counts of child abuse and two felony counts of child neglect as a result of this investigation.

[3]This case suffered a substantial procedural delay directly attributable to the COVID-19 pandemic and resulting judicial emergency.

In August of 2020, the circuit court held the final dispositional hearing. In support of her motion for an improvement period, petitioner's counsel argued that R.L. was the "main perpetrator" who abused the children and that petitioner was afraid of R.L. throughout their relationship. Counsel proffered that, since the adjudicatory hearing, petitioner had obtained employment and had ended her relationship with R.L. Further, counsel proffered that petitioner was willing to participate in the terms of an improvement period. Petitioner presented no evidence in support of her motion. The circuit court found that petitioner had failed to acknowledge the conditions of abuse and neglect and she had failed to demonstrate that she was likely to fully participate in an improvement period. Therefore, the circuit court denied her motion for an improvement period.

Thereafter, the DHHR presented testimony to support its recommended disposition, termination of petitioner's parental rights. A DHHR worker testified that petitioner had only contacted the DHHR twice to ask how the children were. The worker clarified that petitioner had never requested services from the DHHR or sought recommendations for services. Following this testimony, the DHHR moved the circuit court to take judicial notice of all prior testimony, which it granted. Ultimately, the circuit court found that petitioner had not remedied the conditions of abuse and neglect that led to the filing of the petition and that she would not be able to remedy those conditions in the near future. The circuit court further found that it was necessary for the children's welfare to terminate petitioner's parental and custodial rights. Accordingly, the circuit court terminated petitioner's parental and custodial rights by its September 22, 2020, order.[4] Petitioner now appeals that order.

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[4]The parental rights of the father and the custodial rights of R.L. were terminated below. According to the parties, the permanency plan for the children is adoption in their respective foster homes.

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. According to petitioner, an improvement period "shall be allowed unless the court finds compelling circumstances to justify a denial." *See* Syl. Pt. 2, *State ex rel. W. Va. Dept. of Human Serv. v. Cheryl M.*, 177 W. Va. 688, 356 S.E.2d 181 (1987). She argues that she was willing to participate in services to remedy the conditions of abuse and neglect and asserts that she had begun services on her own "with the goal of obtaining valuable knowledge pertaining to domestic violence and its effect on victims." In the face of this evidence, she argues that the circuit court's denial of her motion for an improvement period was erroneous. We find petitioner is entitled to no relief.

Initially, we note that petitioner's reliance on the "compelling circumstances" standard for denying an improvement period is misplaced. This standard was "based upon language in a former version of [West Virginia Code § 49-4-610], prior to the 1996 amendments, which stated that a court was to provide an improvement period unless compelling circumstances indicated otherwise." *In re Charity H.*, 215 W. Va. 208, 216 n.11, 599 S.E.2d 631, 639 n.11 (2004). However, "[w]ith the deletion of such language from the statute, the compelling circumstance concept is no longer relevant to this Court's investigation." *Id*. The current statute requires that the parent "demonstrate[], by clear and convincing evidence, that [she is] likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

Upon review of the record provided, it is clear that petitioner did not meet her burden to be granted a post-adjudicatory improvement period. She presented no evidence that she was likely to participate in services. Her assertions on appeal that she had begun to participate in domestic violence classes prior to the dispositional hearing simply do not appear in the record. There is no evidence that she had begun to take any steps to remedy the conditions of abuse and neglect. Moreover, the DHHR presented evidence that petitioner had not inquired about services throughout the proceedings. Most importantly, petitioner did not acknowledge the conditions of abuse and neglect. As this Court has repeatedly held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Even on appeal, petitioner does not acknowledge the abuse and neglect that she caused the children. The circuit court recognized that her failure to acknowledge the conditions of abuse and neglect rendered an improvement period an exercise in futility and properly denied that motion. Finally, petitioner argues that she was a victim of R.L.'s domestic violence and that she was afraid to intervene in his abuse of the children. However, the record is silent as to petitioner's fear of R.L. or that her fear of him stopped her from preventing his abuse of the children. To the extent that

petitioner is arguing she was a "battered parent" and the circuit court erred in failing to adjudicate her in that manner, we find the record does not support such an argument.[5] The circuit court was well within its discretion to deny petitioner's motion for a post-adjudicatory improvement period, and we find no error in its decision.

Lastly, we note that petitioner fails to challenge the circuit court's ultimate finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of her parental and custodial rights was necessary for the welfare of the children. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the record fully supports the requisite findings, we find no error in the circuit court's termination of petitioner's parental and custodial rights without the imposition of a less restrictive dispositional alternative, such as the improvement period that petitioner requests on appeal.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 22, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

---

[5]West Virginia Code § 49-1-201 defines a "battered parent" as

> a respondent parent, guardian, or other custodian who has been adjudicated by the court to have not condoned the abuse or neglect and has not been able to stop the abuse or neglect of the child or children due to being the victim of domestic violence as defined by §48-27-202 of this code, which was perpetrated by the same person or persons determined to have abused or neglected the child or children.

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton